IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| SUENO FITNESS INC., et al., | CASE NO. 1:23-CV-415 |
| Plaintiffs, | JUDGE TIMOTHY S. BLACK |
| vs. | |
| OH STEELE FITNESS, LLC., et al., | **PLAINTIFFS' MOTION FOR ORDER OF POSSESSION OR, ALTERNATIVELY, A PRELIMINARY INJUNCTION** |
| Defendants. | |

Plaintiffs Sueno Fitness Inc., Hilario Grajeda, and Rebecca Grajeda hereby move this Court pursuant to Ohio Revised Code § 2737.01 to 2737.20 for an order of possession of Plaintiffs' gym equipment. Defendants have refused to pay Plaintiffs for the equipment and have wrongfully retained possession of the equipment to operate a gym for approximately 10 months. In the alternative, Plaintiffs request a preliminary injunction to preserve the status quo.

Respectfully submitted,

*/s/ Tyler M. Jolley*
Tyler M. Jolley (0092772)
Robert W. Schrimpf (0085020)
ROETZEL & ANDRESS, LPA
625 Eden Park Drive, Suite 450
Cincinnati, OH  45202
Phone: 513.361.0200
Fax: 513.361.0335
E-mail: tjolley@ralaw.com
          rschrimpf@ralaw.com

*Attorneys for Plaintiffs Sueno Fitness, Inc.,
Hilario Grajeda, and Rebecca Grajeda*

## MEMORANDUM IN SUPPORT

### I.     STATEMENT OF FACTS

For years, Plaintiffs operated a gym at 827 W. Central Ave., Springboro, OH 45066 under the name G.A.C. Fitness (the "Premises"). (Affidavit of Hilario Grajeda at ¶ 3, attached as Exhibit 1). Plaintiffs owned the equipment and inventory used for the gym in the Premises (hereinafter "Equipment"). (Grajeda Affidavit at ¶ 4). Lists of the Equipment owned by Plaintiffs are attached as Exhibit 1A and Exhibit 1B to this Motion. (Grajeda Affidavit at ¶ 4).

In or about October 2022, Shane Franklin ("Franklin") approached Plaintiffs to purchase the Equipment and assume the lease for the Premises so that Defendants could operate a gym in the Premises under the name "Fitness 1440." (Grajeda Affidavit at ¶ 5). Initially, Plaintiffs asked for more than $200,000 for the Equipment. (Grajeda Affidavit at ¶ 6). Defendants praised Hilario and Rebecca's training and work and said they were crucial to Fitness 1440's business and wanted them to continue to train and work at the gym after the sale. (Grajeda Affidavit at ¶ 7). It was also agreed that Hilario would receive 100% of the money received for personal training he provided at the gym. (Grajeda Affidavit at ¶ 8). Ultimately, with this arrangement, Plaintiffs agreed to sell the Equipment for $60,000. (Grajeda Affidavit at ¶ 11).

On November 1, 2022, Sueno Fitness, Inc. ("Sueno Fitness"), OH Steele Fitness, LLC ("Steele Fitness"), and Shane Franklin ("Franklin") entered into an Asset Purchase Agreement ("APA"). (Grajeda Affidavit at ¶ 9). A copy of the APA is attached to this Motion as Exhibit 1C. (Grajeda Affidavit at ¶ 9). Pursuant to the APA, Steele Fitness and Franklin agreed to purchase "all equipment of the Company or owner related to the Company's business." (Grajeda Affidavit at ¶ 10). This included all Equipment in the gym and Premises. (Grajeda Affidavit at ¶ 10).

Pursuant to the APA, Steele Fitness and Franklin were required to deliver to Plaintiffs the purchase price of $60,000 at closing, which was November 1, 2022. (Grajeda at ¶ 12). To date,

Defendants have not paid Plaintiffs for the Equipment. (Grajeda at ¶ 13). Defendants continue to use the Equipment to operate a Fitness 1440 gym in the Premises. (Grajeda Affidavit at ¶ 14).

Steele Fitness and Franklin contend—**and in fact represented to the Court during a telephone hearing on July 19, 2023**—that they do not owe Plaintiffs for the Equipment because they have made installment payments for the Equipment and/or are entitled to an "offset" for money that Hilario received for personal training he provided at the gym. This is false.

Plaintiffs have not received any payment from Defendants for the Equipment. (Grajeda Affidavit at ¶ 13). In fact, contrary to Defendants' representations to the Court that they have paid for the Equipment via installment payments, on or about July 18, 2023 Franklin told the then manager of Fitness 1440 that he "will start right now paying the $2,500 per month." (Grajeda Affidavit at ¶ 24).

As for Defendants' representation they are entitled to an "offset" for money Hilario received for personal training he provided, Defendants agreed to pay Hilario 100% of the money received from personal training he provided—and did in fact pay Hilario 100% of the money received for personal training he provided at the gym. (Grajeda Affidavit at ¶ 22).[1] This is supported by Hilario's affidavit and payroll documents that show Hilario's percentage as "100%." (Grajeda Affidavit at ¶ 8).[2]

On May 2, 2023, counsel for Plaintiffs sent a formal written demand to Franklin and Heath York ("York")—who Franklin had represented to be the CFO of Fitness 1440—demanding payment of the $60,000 within 30 days. (Exhibit 2). In response to the May 2, 2023 letter, on May 9, 2023, York—or someone purporting to be York—sent an email to Plaintiffs advising that

---

[1] This was, of course, until Defendants kicked Hilario out of the gym after Plaintiffs' counsel sent a letter to Defendants demanding payment of the $60,000 for Equipment.

[2] The payroll document references "Chio Grajeda." This is Hilario, who goes by Chico.

Plaintiffs were no longer permitted in the gym and that if Plaintiffs entered the gym, it would be considered a "trespass." (Exhibit 3).

On May 11, 2023, counsel for Plaintiffs sent an email to Franklin and York advising that continued wrongful use of the Equipment without payment would result in legal action. (Exhibit 4). Plaintiffs' counsel demanded that payment of $60,000 be made by May 14, 2023 or, alternatively, that Plaintiffs be permitted to access the Premises to consummate a sale of the Equipment to another ready, willing, and able buyer. Defendants refused. (Exhibit 4).

Plaintiffs filed their Complaint in this action on July 5, 2023. Eight days later, on July 13, 2023, this picture was taken, showing Plaintiffs moved the Equipment from the gym into trailers:





In addition, members and employees of Fitness 1440 reached out to Plaintiffs to tell them that Defendants removed Plaintiffs' Equipment from the Premises and were planning to remove more of Plaintiffs' Equipment from the Premises. (Grajeda at ¶ 19). This forced Plaintiffs to file a Motion For Emergency Order Of Possession on July 15, 2023. (Doc. # 7). During a telephone conference with the Court on July 19, 2023, counsel for Steele Fitness and Franklin confirmed the information Plaintiffs had received and admitted that Defendants moved Plaintiffs' Equipment out of the gym and plan to transport the Equipment out of state for use in other gyms, including a Fitness 1440 gym in Knoxville, Tennessee.

## II.    LAW AND ARGUMENT

### A.    Plaintiffs Are Entitled To An Immediate Order of Possession Of The Equipment.

R.C. § 2737.03 states in pertinent part:

Any party to an action involving a claim for the recovery of specific personal property, upon or at any time after commencement of the action, may apply to the court by written motion for an order of possession of the property. The motion shall have attached to it the affidavit of the movant, his agent, or his attorney containing all of the following:

(1)    A description of the specific personal property claimed and the approximate value of each item or category of property claimed;

(2)    The specific interest of the movant in the property and, if the interest is based upon a written instrument, a copy of that instrument;

(3)    The manner in which the respondent came into possession of the property, the reason that the detention is wrongful and, to the best of the knowledge of the movant, the reason, if any, that the respondent may claim the detention is not wrongful;

(4)    The use to which the respondent has put the property, as determined by the movant after such investigation as is reasonable in the circumstances;

(5)    The extent, if any, to which the movant is or will be damaged by the respondent's detention of the property;

(6)    To the best of the movant's knowledge, the location of the property;

(7)    That the property was not taken for a tax, assessment, or fine pursuant to statute, or seized under execution of judgment against the property of the movant or, if so seized, that it is statutorily exempt from seizure.

R.C. § 2737.07 provides that upon the filing of a motion for possession under R.C. §

2737.03, a court "[s]hall issue an order of possession if it finds, on the basis of the affidavit * * *

that there is probable cause to support the motion." "Probable cause to support the motion" means:

[t]hat it is likely that the movant will obtain judgment against the respondent that entitles the movant to permanent possession of the specific personal property that is the subject of the motion filed pursuant to section 2737.03 of the Revised Code.

6

R.C. § 2737.01(C).

Additionally, R.C. § 2737.19 provides that an order of possession may be entered without notice to a respondent under certain circumstances. Specifically, that section states in part:

(A) Upon the filing of a motion for an order of possession, the court may issue an order of possession without issuing notice to the respondent and without conducting a hearing if the court finds that there is probable cause to support the motion and that the movant will suffer irreparable injury if the order is delayed until the respondent has been given the opportunity for a hearing. The court's findings shall be based upon the motion and affidavit filed pursuant to section 2737.03 of the Revised Code and any other relevant evidence that it may wish to consider.

(B) A finding by the court that the movant will suffer irreparable injury may be made only if the court finds the existence of either of the following circumstances:

(1) There is present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the court;

(2) The value of the property will be impaired substantially if the issuance of an order of possession is delayed.

Here, the Affidavit of Hilario Grajeda contains all of the information required by R.C. § 2737.03 and shows there is probable cause to support the motion:

(1)     Lists of the Equipment are attached to Hilario Grajeda's Affidavit. The lists show the amounts Plaintiffs' paid for the Equipment. The approximate value of the Equipment, taking into consideration the useful life of the Equipment, is $156,132.70. (Grajeda Affidavit at ¶ 22).

(2)     Plaintiffs own the Equipment. Plaintiffs purchased the Equipment in Exhibit 1A from the prior owner of the gym in 2012. (Grajeda Affidavit at ¶ 4). Plaintiffs purchased additional equipment listed in Exhibit 1B in 2020 and 2021. (Grajeda Affidavit at ¶ 4). There is no written instrument upon which Plaintiffs' ownership of the Equipment is based. (Grajeda at ¶ 4).

(3)     Defendants came into possession of the Equipment after Defendants agreed to purchase the Equipment for $60,000 pursuant to the APA. (Grajeda Affidavit at ¶ 15). However, Defendants have not paid for the Equipment. Defendants have no basis to claim their detention of the Equipment is not wrongful. (Grajeda Affidavit at ¶ 15). Defendants may claim they have paid for the Equipment and/or are entitled to a "set off" for amounts paid to Hilario for personal training. However, as discussed above, Defendants have not paid for the Equipment and Hilario was always entitled to 100% of the money for personal training he provided. (Grajeda Affidavit at ¶ 8 and 13).

7

(4) Defendants are using the Equipment to operate a gym at the Premises. (Grajeda Affidavit at ¶ 14). Some or all of the Equipment has been moved into trailers as Defendants plan to remove the Equipment from the jurisdiction and use some or all of the Equipment to operate another Fitness 1440 gym in another state.

(5) Plaintiffs have been and will continue to be damaged by Defendants' continued wrongful detention of the Equipment. (Grajeda Affidavit at ¶ 16, 17, 20). Defendants' wrongful detention and use of the Equipment has caused and will cause wear, tear, and destruction of the Equipment. (Grajeda Affidavit at ¶ 17). It is likely the Equipment will be concealed, disposed of, or placed beyond the Court's jurisdiction. (Grajeda Affidavit at ¶ 17-20).

(6) To the best of Plaintiffs' knowledge, the Equipment is located at 827 W. Central Ave., Springboro, OH 45066 in the gym or in trailers in the parking lot of the gym ready to be moved out of state by Defendants. (Grajeda Affidavit at ¶ 21).

(7) The Equipment was not taken for a tax, assessment, or fine pursuant to statute, or seized under execution of judgment against the property of the Plaintiffs. (Grajeda Affidavit at ¶ 23).

There can be no question that Plaintiffs are the rightful owners of the Equipment. Based upon the Affidavit of Hilario Grajeda and other facts presented in this motion, it is not only likely—it is inevitable—that Plaintiffs will obtain a judgment against Defendants entitling them to possession of the Equipment. Furthermore, if Plaintiffs are not given immediate possession of the Equipment, Plaintiffs will suffer irreparable injury. There is a present danger the Equipment will be immediately disposed of, concealed, or placed beyond the jurisdiction of the Court. Indeed, the Equipment has been loaded into trailers and Defendants have admitted to the Court that they plan to move the Equipment out of state. The value of the Equipment will also be impaired substantially as Defendants take apart the Equipment, load and unload the Equipment, move the Equipment, and continue to use the Equipment for their gym operations across the country.

It is abundantly clear that Defendants have no intention of paying for the Equipment and will do everything they can to move, conceal, and dispose of the Equipment in a manner that makes

404550.01.121025.0001

repossession difficult or even impossible.[3] For these reasons, Plaintiffs are entitled to immediate possession of the Equipment pursuant to R.C. § 2737.01 to 2737.20.

**B.     In The Alternative, Plaintiffs Request A Preliminary Injunction To Preserve The Status Quo.**

The determination of whether injunctive relief should issue is based upon a balancing of four factors, each of which is relevant, though not essential, to the granting of injunctive relief:

1.     the likelihood that the movant will succeed on the merits of its claims;

2.     the likelihood that the movant will be irreparably harmed absent an injunction;

3.     the likelihood that the Defendant will not be unduly harmed by the injunction; and

4.     he likelihood that the public interest will be served by the injunction.

*See, e.g., City of Cleveland v. Cleveland Elec. Illuminating Co.*, 115 Ohio App.3d 1, 12 (1996); *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.*, 109 Ohio App.3d 786, 790 (1996); *Corbett v. Ohio Bldg. Auth.*, 86 Ohio App.3d 44,49 (1996); *Glover v. Johnson*, 855 F.2d 277, 282 (6th Cir. 1988); *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228-29 (6th Cir. 1985); *Mason Cty. Med. Assoc. v. Knebel*, 563 F.2d 256, 261. (6th Cir. 1977).

No single factor is dispositive in determining whether injunctive relief is appropriate. Rather, a plaintiff's burden of proof as to any one of these four factors is inversely proportional to

---

[3] Plaintiffs' concerns are amplified by Defendant Franklin's history of running sham gym operations. Franklin represented to Plaintiffs that his name was "Mayson Steele" when he negotiated with Plaintiffs, which was done to conceal Franklin's identity and his history of scamming gym owners and members. Indeed, in 2012, the 10 News I-Team ran a story on Shane Franklin's business dealings with various gyms. In that story, 10 News I-Team reported that Shane Franklin was "selling promises of fitness and fun but specializing only in thinning out his clients' wallets." In that story, 10 News I-Team reported that Shane Franklin had a history of "taking money and not delivering on his promises." In that story, 10 News I-Team reported that Shane Franklin was under investigation for allegations of money mismanagement and forgery. In that story, it was reported that Shane Franklin was improperly using the name and logo of Powerhouse Gym, and that Powerhouse Gym wrote to Franklin advising that the "unauthorized use of our trademark is a blatant misrepresentation…" The 10 News I-Team story is located here: https://www.youtube.com/watch?v=XsDo1L8DOyw. This fact obviously increases Plaintiffs' worries about what Defendants might be doing or planning to do with the Equipment.

404550.01.121025.0001

the strength of the others. For example, "[w]hen there is a strong likelihood of success on the merits, preliminary injunctive relief may be justified even though a Plaintiff's case of irreparable injury may be weak." *Cleveland vs. Cleveland Elec. Illum. Co.*, 115 Ohio App. 3d 1, 14 (Cuyahoga Cty. 1996); *see also Frisch's Restaurant,* 759 F.2d at 1270 (6th Cir. 1985) (a finding of "likelihood of success" is not necessary where Plaintiff shows "serious questions going to the merits" and demonstrates "irreparable harm which decidedly outweighs any potential harm to the Defendant"); *In re DeLorean Motor Co.*, 755 F.2d at 1228 (6th Cir. 1985) (degree of likelihood of success required depends on the strength of the other factors). In this case, all factors weigh heavily in favor of granting Plaintiffs' injunctive relief.

### i.      Plaintiffs are likely to prevail on the merits of their claims.

There is no dispute that Defendants agreed to pay Plaintiffs $60,000 for the Equipment. There is also no dispute that Defendants have not paid Plaintiffs a single dollar for the Equipment. (Grajeda Affidavit at ¶ 13). Furthermore, there is no dispute that Defendants continue to convert the Equipment by their continued wrongful possession and use of the Equipment to run a gym. Therefore, there is a substantial likelihood that Plaintiffs will succeed on the merits of their claims for, at a minimum, breach of contract, unjust enrichment, conversion, and replevin.

### ii.     Plaintiffs have been harmed and will continue to be irreparably harmed without a preliminary injunction.

Plaintiffs will face immediate irreparable injury without an injunction as the Equipment may be concealed or disposed of. (July 19, 2023 Minute Entry and Notation Order) (citing *McGirr v. Rehme*, 891 F.3d 603, 613 (6th Cir. 2018) ("The concealment and dissipation of assets likely obtained through fraud constitutes irreparable harm for the purposes of issuing a preliminary injunction.")). Indeed, counsel for Steele Fitness and Franklin confirmed during a telephone conference with the Court on July 19, 2023 that if not enjoined, they will move Plaintiffs'

10

Equipment out of state. From there, and given Defendants' conduct to date and Franklin's history of scamming gym owners and customers, there is no telling where Plaintiffs' Equipment will go. Furthermore, the Equipment will continue to lose value, and may ultimately be rendered useless, as it is moved and used with Defendants having no real interest in its maintenance or safekeeping.

### iii. Defendants will not be unreasonably harmed by a preliminary injunction.

Defendants will not be unreasonably harmed by injunctive relief because such an order would only be enforcing the valid contract to which Defendants agreed and preventing Defendants from engaging in further tortious conduct. Consequently, this factor weighs in favor of granting injunctive relief.

### iv. The public interest will be served by a preliminary injunction.

The public interest requirement for granting a preliminary injunction in this case undoubtedly is served by deterring the type of conduct that precipitated the need to file the present action. Public policy favors enforcing valid contracts. *See Economou v. Physicians Weight Loss Centers*, 756 F. Supp. 1024, 1039 (N.D. Ohio 1991) ("if the public has an interest in these issues at all, it is seeing that reasonable non-compete covenants are preserved"). Granting a preliminary injunction will uphold these interests, and the public interest overwhelmingly favors Plaintiffs.

### C. The Court Should Waive The Requirement Of A Surety Bond In This Case.

Whether the Court grants an order of possession or a preliminary injunction, a surety bond is unnecessary in this case. The purpose of issuing a surety bond is to protect the person enjoined from harm suffered if the party is found to have been wrongfully enjoined. See Fed. R. Civ. P. 65. Rule 65(C) gives the Court the discretion to set the amount as it deems proper. Furthermore, the Court has discretion as to whether to require the posting of security at all. *See Moltan Co. v. Eagle-*

*Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security").

In a case such as this—where Plaintiffs have an undeniable right to the Equipment and will undoubtedly prevail on the merits of their claims and where Defendants will suffer no harm if possession or injunction issues—it is appropriate to forego the bond requirement.

## III.  **CONCLUSION**

Plaintiffs are the rightful owners and possessors of the Equipment, while Defendants have violated their obligations by not paying for the Equipment, refusing to return the Equipment, continuing to operate a gym for profit using the Equipment, and planning to move the Equipment out of state. Plaintiffs are thus entitled to recover the Equipment, and they face a real risk that further passage of time may result in the Equipment being damaged or even concealed. Accordingly, for the reasons discussed in this motion, Plaintiffs are entitled to an order of immediate possession of the Equipment. Alternatively, Plaintiffs are entitled to a preliminary injunction preventing Defendants from moving, disposing of, concealing, or dissipating the value of the Equipment until Plaintiffs obtain a judgment entitling them to possession of the Equipment.

Respectfully submitted,

*/s/ Tyler M. Jolley*
Tyler M. Jolley (0092772)
Robert W. Schrimpf (0085020)
ROETZEL & ANDRESS, LPA
625 Eden Park Drive, Suite 450
Cincinnati, OH  45202
Phone: 513.361.0200
Fax: 513.361.0335
E-mail: tjolley@ralaw.com
         rschrimpf@ralaw.com

*Attorneys for Plaintiffs Sueno Fitness, Inc.,*
*Hilario Grajeda, and Rebecca Grajeda*

12

## CERTIFICATE OF SERVICE

A true copy of the foregoing was electronically filed with the Court on September 7, 2023.

In addition, a true copy of the foregoing was served via U.S. mail on September 7, 2023, upon the

following:

OH STEELE FITNESS, LLC
c/o Shane Franklin
230 Hill Road, Apt. 23
Dalton, GA 30721

OH STEELE FITNESS, LLC
c/o Shane Franklin
1468 Lexington Ave.
Mansfield, OH 44097

SHANE FRANKLIN
230 Hill Road, Apt. 23
Dalton, GA 30721

FITNESS 1440, INC.
870 East Williams Field Road
Gilbert, AZ 85295

FITNESS 1440, INC.
c/o Steven Beach
870 East Williams Field Road
Gilbert, AZ 85295

PHOENIX 1440, INC.
c/o Steven Beach
870 East Williams Field Road
Gilbert, AZ 85295

*/s/ Tyler M. Jolley*
Attorney for Plaintiffs

404550.01.121025.0001