## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| SUENO FITNESS, INC., *et al.*, | : | Case No. 1:23-cv-415 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| OH STEELE FITNESS, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING PLAINTIFFS' MOTION
## FOR PRELIMINARY INJUNCTION

This civil case is before the Court on Plaintiffs' motion for order of possession or, alternatively, a preliminary injunction (Doc. 10, 11). No party has responded and the time to do so has expired.[1]

## I.    BACKGROUND

### A. Factual Background

For years, Plaintiffs Hilario and Rebecca Grajeda operated Plaintiff Sueno Fitness, a gym located at 827 W. Central Ave, Springboro, Ohio 45066 (the "Premises"). (Doc. 10-1 at ¶ 3). Sueno Fitness owned the equipment and inventory used at the gym (the "Equipment"). (*Id.* at ¶ 4; *see also* Docs. 10-2, 10-3).

---

[1] Also before the Court is Plaintiffs' motion to dismiss Defendants Fitness 1440 and Phoenix 1440 pursuant to Fed. R. Civ. P. 21. (Doc. 14). No party has opposed the motion, and the time to do so has expired. Accordingly, the motion to dismiss (Doc. 14) is **GRANTED**, all claims against Fitness 1440 and Phoenix 1440 are **DISMISSED without prejudice**, and Fitness 1440 and Phoenix 1440 shall be terminated from the docket. Given the dismissal of these entities, and for the sake of clarity, any use of the term "Defendants" throughout this Order refers only to Defendants Shane Franklin and OH Steele Fitness, LLC.

In October 2022, Defendant Shane Franklin, the sole member of Defendant OH Steele Fitness, LLC, approached Plaintiffs to purchase the Equipment and assume the lease for the Premises to operate the gym as a Fitness 1440. (Doc. 10-1 at ¶ 5). Plaintiffs asked for $200,000+ for the Equipment.[2] (*Id.* at ¶ 6). During negotiations, Defendants purportedly promised the Gradeja's that they could continue training clients, working at the gym, and earning 100% of the money for any personal training sessions worked. (*Id.* at ¶¶ 7-8).[3]

On November 1, 2022, Plaintiffs and OH Steele Fitness entered into an Asset Purchase Agreement (the "APA"). (Doc. 10-4). In essence, the APA is an outright purchase by OH Steele Fitness of Plaintiffs' business. More specifically, pursuant to the APA, OH Steele Fitness agreed to purchase the following from Plaintiffs: (a) all client and customer lists, and business records; (b) all equipment; (c) any inventory related to the business; (d) all intellectual property (*e.g.*, name, copyrights, website, domain names, etc.); (e) all "goodwill;" and (f) any Assigned Contracts.[4] (*Id.* at Sec. I.1). OH Steele Fitness and Plaintiffs agreed to a purchase price of $60,000. (*Id.* at Sec. I.3).

---

[2] Plaintiffs currently assert that the approximate value of the equipment is $156,132.70. (Doc. 10-1 at ¶ 22).

[3] Plaintiffs submitted payroll documentation for Mr. Gradeja from January 1-14, 2023, showing that he earned $4,095.66 during that time. (Doc. 10-5). Mr. Gradeja claimed that this evidences Defendants' agreement that he could continue training at the gym and receive 100% of the earnings for personal training provided. (Doc. 10-2 at ¶ 8).

[4] The APA is silent on the Gradeja's continued employment with the gym and personal training earnings.

2

OH Steele Fitness subsequently took over ownership of the gym, including possession of the Premises and the Equipment. According to Plaintiffs, to date, OH Steele Fitness has not paid the purchase price. (Doc. 10-1 at ¶ 13).

On May 2, 2023, counsel for Plaintiffs sent a written demand letter to Defendants and a representative of Fitness 1440, demanding payment of the purchase price within 30 days. (Doc. 10-7). On May 9, 2023, Plaintiffs received an email from Fitness 1440, advising Plaintiffs that they were no longer permitted on the Premises and that any entry would be considered trespass. (Doc. 10-8). On May 11, 2023, counsel for Plaintiffs responded via email, advising them that their continued use of the gym's equipment was wrongful. (Doc. 10-9). Plaintiffs' counsel further instructed Defendants that they had two options to take prior to May 14, 2023: (1) pay the $60,000; or (2) confirm that Defendants would permit Plaintiffs to access the Premises on May 22 to sell the Equipment to another buyer. (*Id.*)

## B. Procedural Background

About two months later, on July 5, 2023, Plaintiffs initiated the current action. (Doc. 1). Plaintiffs asserted six causes of action: (1) breach of contract; (2) unjust enrichment; (3) conversion; (4) replevin; (5) fraud; and (6) violations of the Ohio Consumer Sales Practices Act.

On Saturday, July 15, 2023, Plaintiffs submitted an emergency and *ex parte* motion for order of possession, requesting that the Court issue an order entitling Plaintiffs to take immediate possession of the Equipment. (Doc. 7). Plaintiffs argued that Defendants violated their obligations by not paying for the Equipment and refused to pay

for the Equipment, making the Equipment rightfully Plaintiffs and entitling Plaintiffs to repossess the Equipment. (*Id*.) Plaintiffs further suggested the motion was an emergency because, at the time the motion was filed, Defendants were loading the Equipment into shipping containers and threatening to move the Equipment outside the jurisdiction.

Although the motion was filed *ex parte*, Plaintiffs were able to identify potential counsel for Defendants. On July 19, 2023, the Court held two telephone conferences with the parties to discuss Plaintiffs' motion for an emergency order of possession. Attorney Tyler Jolley appeared for Plaintiffs; Attorney Jeffrey Nye appeared for Defendants for the limited capacity of those conferences and for settlement discussions. During those conferences, the Court converted Plaintiffs' motion for an emergency order of possession to a motion for temporary restraining order. The Court granted the motion, finding that, until the parties were able to fully brief the motion, the status quo must be maintained because Plaintiffs faced immediate irreparable injury that the Equipment may be disposed of or concealed absent an injunction. The Court also set an expedited briefing schedule on Plaintiffs' motion for preliminary injunction. (*See* 7/19/2023 Min. Entries & Not. Orders).

Originally, the temporary restraining order was set to expire on August 2, 2023. However, Plaintiffs and Defendants (through their limited capacity counsel) twice agreed to extend the temporary restraining order and briefing schedule to allow time for the parties to explore settlement. (7/21/2023 Not. Order; 8/4/2023 Not. Order). Fed. R. Civ. P. 65(b)(2).

On September 7, 2023, Plaintiffs filed their motion for order of possession, or alternatively, preliminary injunction. (Doc. 10). The Court immediately contacted counsel to schedule an informal conference. During those communications, the Court learned that Attorney Jeffrey Nye was not retained to represent Defendants in any capacity outside of the July 19 telephone conferences and settlement discussions. (Doc. 12). The Court also learned that Mr. Franklin had been facing serious health issues, including an impending surgery. (*Id.*) Thus, given Defendants lack of representation and Mr. Franklin's health concerns, the Court *sua sponte* extended the temporary restraining order and briefing schedule on Plaintiffs' motion, and set a telephone conference. (*Id.*)

On October 2, 2023, the Court held another telephone conference. Despite being provided ample notice, Defendants did not appear. Because the conference was duly noticed, the Court proceeded. At the conference, Plaintiffs indicated their intent to file a motion for default judgment against Defendant OH Steele Fitness, which Defendant had failed to timely respond to the Complaint after being served. (Oct. 2, 2023 Min. Entry & Not. Order).[5]

On October 5, 2023, Plaintiffs contacted the Court via email. Plaintiffs requested an emergency telephone conference, stating it was their belief that Defendants were moving the Equipment. The Court held a telephone conference that afternoon. (10/05/2023 Min. Entry & Not. Order). Attorney Tyler Jolley appeared for Plaintiffs. (*Id.*) Mr. Franklin also appeared for himself, but was reminded that he cannot represent

---

[5] As of the date of this Order, the docket does not reflect that Mr. Franklin has been served with a copy of the summons and complaint.

Defendant OH Steele Fitness because he is not a licensed attorney. (*Id.*) At the conference, Mr. Franklin represented to the Court that Defendants were not moving the Equipment from the Premises, *i.e.*, not violating the temporary restraining order, but consolidating the Equipment into fewer shipping containers. (*Id.*) Plaintiffs again indicated their intent to seek default judgment against OH Steele Fitness, and Mr. Franklin was advised that default judgment may be imminent due to OH Steele Fitness's failure to appear in the action. (*Id.*)

On October 6, 2023, Plaintiffs applied to the Clerk for an entry of default as to OH Steele Fitness, which entry the Clerk entered that same day. (Docs. 19, 20). Plaintiffs have not yet moved for default judgment against OH Steele Fitness.

As of the date of this Order, Plaintiffs' motion for order of possession, or alternatively, a preliminary injunction, is ripe for review. Defendants' deadline to respond to Plaintiffs' motion was October 4, 2023. (Doc. 12). To date, Defendants have failed to submit any response, timely or not. The temporary restraining order expires on October 19, 2023. (*Id.*)

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. 65(d) requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state the terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act restrained." Moreover, "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-*

6

*Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Thus, despite Defendants'

failure to respond to the motion, the Court declines to grant any relief on the sole fact that

Defendants failed to oppose Plaintiffs' motion.

In determining whether to grant injunctive relief, this Court must weigh four

factors: (1) whether the moving party has shown a strong likelihood of success on the

merits; (2) whether the moving party will suffer irreparable harm if the injunction is not

issued; (3) whether the issuance of the injunction would cause substantial harm to others;

and (4) whether the public interest would be served by issuing the injunction. *Hall v.*

*Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526–27 (6th Cir. 2017). These four

considerations are factors that must be balanced, not prerequisites that must be met.

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997).

## III. ANALYSIS

### A. Mr. Franklin has received sufficient notice of the motion.

Before considering Plaintiffs' motion, the Court raises an initial issue: whether

Defendants have received sufficient notice of Plaintiffs' motion. Specifically, the Court

raises this concern because, although Defendant OH Steele Fitness has been properly

served, Mr. Franklin has not.[6]

Pursuant to Fed. R. Civ. P. 65(a), "the court may issue a preliminary injunction

**only on notice to the adverse party**." Fed. R. Civ. P. 65(a) (emphasis added). When

considering this rule along with personal jurisdiction requirements, some courts,

---

[6] Pursuant to Fed. R. Civ. P. 4(d), OH Steele Fitness, through its agent Mr. Franklin, waived service. (Doc. 9).

including district courts within this circuit, have denied motions for preliminary injunction when the motion is sought before defendants are served with a summons and complaint. *E.g.*, *Easterling v. Rice*, No. CV 2:19-469-JMH, 2019 WL 1338712, at *1 (S.D. Ohio Mar. 25, 2019) ("Because none of the defendants had been properly served with process, the Court lacks personal jurisdiction over them and cannot grant the injunctive relief he seeks."); *Jones v. Majeed*, No. 1:19-CV-316, 2019 WL 10888152, at *1 (W.D. Mich. May 17, 2019), *aff'd*, No. 1:19-CV-316, 2019 WL 10888153 (W.D. Mich. May 30, 2019) ("When a preliminary injunction is sought under Rule 65(a), service of the summons and the complaint is required.").

However, other courts have not read the rule so strictly because Rule 65(a) only requires "notice," not completion of formal service. *See Sogefi USA Inc., v. Interplex Sunbelt, Inc.*, 538 F. Supp. 3d 620, 627 (S.D.W. Va. 2021) (discussing cases).[7] In *Sogefi*, the court concluded that it could enjoin a defendant who received sufficient notice of the motion for preliminary injunction prior to service, particularly when service was impending, because a strict rule requiring service before an injunction could inhibit the court's ability to maintain the status quo with an injunction. *Id.* at 626. The court continued: "While it is surely optimal for an opposing party to be served with process before an injunction is issued, a strict rule precluding the court from granting relief makes little sense in cases like the present one where the defendant attempts to demand service

---

[7] *See also id.* at 626, n.7 (noting that "the only reference to service in the rule, is that *once issued*, a preliminary injunction binds only those 'who receive actual notice of it by personal service or otherwise.'") (citing Fed. R. Civ. P. 65(d)(2) (emphasis in original)).

through complicated and lengthy procedures." *Id*.

Having reviewed the persuasive authority and given the circumstances of this case, the Court finds that Mr. Franklin has received sufficient notice of the motion, complying with Rule 65(a), and as discussed *infra*, an injunction may be entered against him. Specifically, Mr. Franklin has known of the possibility of a preliminary injunction since July 19, 2023 when the Court issued the temporary restraining order and set a briefing schedule on the motion for preliminary injunction. (7/19/2023 Min. Entries & Not. Orders). Mr. Franklin agreed to extend the temporary restraining order and briefing schedule twice through his limited capacity counsel. (7/21/2023 Not. Order; 8/4/2023 Not. Order). Fed. R. Civ. P. 65(b)(2). Mr. Franklin waived service on behalf of OH Steele Fitness as OH Steele Fitness's agent. Thus, it would be unreasonable to deny Plaintiffs a preliminary injunction on the sole basis that Mr. Franklin has yet to be properly served because there is no doubt that Mr. Franklin has received actual notice of the motion.[8]

However, although the Court will not deny Plaintiffs' request for preliminary injunction on the strict basis that service has not been completed on Mr. Franklin yet, Plaintiffs are put on notice.

---

[8] Even if the Court were to deny an injunction as to Mr. Franklin due to lack of service, such denial would be, in large part, immaterial. Plaintiffs seek an order enjoining Defendants from concealing or disposing of the Equipment. But Mr. Franklin is not a party to the APA or a purchaser of the Equipment. Pursuant to the APA, OH Steele Fitness purchased the Equipment and other assets. (Doc. 10-4 at 15). Thus, technically speaking, OH Steele Fitness is in control of and the possessor of the Equipment, not Mr. Franklin. However, given the ties between Mr. Franklin and OH Steele Fitness, Mr. Franklin should be included with any injunction related to the Equipment.

Pursuant to Fed. R. Civ. P. 4(m), a plaintiff has 90 days to complete service.  And as the record currently reflects, Plaintiffs have failed to timely complete service.  After the complaint was filed on July 5, 2023, a summons was issued to Mr. Franklin.  (Doc. 4 at 9).  But the summons was never returned executed.  On September 14, 2023, the Clerk sent the summons and complaint via certified mail to Mr. Franklin at that same address.  (Doc. 13).  But there is no record showing that Mr. Franklin received that mailing.  There is no waiver on file for Mr. Franklin.[9]  Plaintiffs have had over 90-days to properly serve Mr. Franklin but have failed to do so.

Thus, Plaintiffs are **ORDERED to show cause**, within 30 days of this Order, why Mr. Franklin should not be dismissed without prejudice for failure to timely serve.  Fed. R. Civ. P. 4(m).  Failure to show proper service within 30 days will result in the action against Mr. Franklin being dismissed without prejudice and the preliminary injunction, discussed *infra*, being dissolved as to Mr. Franklin.[10]

---

[9] The Court notes that Plaintiffs' service issues may be the result of inconsistent addresses.  The summons and Clerk's certified mail were addressed to "230 Hill Road, Apartment 23, Dalton, Georgia 30721."  (Doc. 4 at 9; Doc. 13).  However, the Asset Purchase Agreement lists a different address for Mr. Franklin, "203 Hill Road, Apartment 23, Dalton, Georgia 30721."  (Doc. 10 at 15).  Moreover, the waiver signed by Mr. Franklin on behalf of OH Steele Fitness lists a third address, "103 Hill Road #19, Dalton, Georgia 30721."  (Doc. 9 at 4).

[10] This Order does not prohibit Mr. Franklin from raising any appropriate defenses, *e.g.*, Fed. R. Civ. P. 12(b), if and when he is properly served.

**B. Plaintiffs' request for a preliminary injunction is GRANTED.**

Having found that both Defendants had sufficient notice of the motion for preliminary injunction, the Court next considers the four preliminary injunction factors.[11]

### 1. *Likelihood to Success on the Merits*

The first preliminary injunction factor is whether Plaintiffs have established a strong likelihood of success on the merits. To establish a strong likelihood of success on the merits, a plaintiff "is not required to prove [its] case in full." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). However, a plaintiff "must show more than a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).

Plaintiffs do not apply any substantive law when discussing their likelihood of success on the merits. (Doc. 10 at 10). Instead, Plaintiffs generally argue that they are likely to succeed on all their claims because "there is no dispute" that Defendants agreed to pay Plaintiffs $60,000 for the Equipment and Defendants have failed to pay. (*Id.*)

---

[11] Pursuant to Fed. R. Civ. P. 65(a)(1), "[t]he court may issue a preliminary injunction only on notice to adverse party." The Rule does not expressly require a hearing, but the Sixth Circuit has clarified that, "although a hearing is not required when the issues are primarily questions of law, Rule 65(a)(1) does require a hearing when there are disputed factual issues material to the preliminary injunction." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 246 (6th Cir. 2011) (quotation omitted). Here, Defendants have known of the possibility of a preliminary injunction since July 19, 2023, when the Court entered the temporary restraining order and set a briefing schedule on the motion for preliminary injunction. The temporary restraining order and the briefing schedule were then extended three times, twice per the agreement of the parties and once by the Court. Despite being given ample notice and opportunity to be heard, Defendants have presented no disputed factual issues material to the preliminary injunction. Thus, the Court finds a hearing unnecessary.

Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).[12]

As currently presented, Plaintiffs have shown a strong likelihood of success on their breach of contract claim.  The APA is a valid contract.[13]  (Doc. Doc. 10-4). Defendants breached the APA by failing to pay the $60,000 purchase price, and Plaintiffs were damaged by the breach.  Accordingly, Plaintiffs' likelihood of success on the merits favors the issuance of a preliminary injunction.

### 2. *Irreparable Harm*

The second preliminary injunction factor is whether Plaintiffs will suffer immediate and irreparable harm absent injunctive relief.

Generally, "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578); *HBA Motors, LLC v. Brigante*, No. 1:21-CV-624, 2021 WL 4709733, at *4 (S.D. Ohio Oct. 7, 2021) (citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund,*

---

[12] The parties' agreement is governed by the laws of the State of Florida.  (Doc. 1-2 at Sec. VII.10).

[13] Plaintiffs make no argument that the APA is invalid.  Indeed, Plaintiffs consistently argue in favor of the validity of the APA.  (*See* Doc. 1 at ¶¶ 36-40 (seeking relief for breach of the APA); Doc. 10 at 11 ("Defendants will not be unreasonably harmed by injunctive relief because such an order would only be enforcing the valid contract…Public policy favors enforcing valid contracts.")).  Nor have Plaintiffs pled or argued that the APA should be rescinded.  *See TTSI Irrevocable Tr. v. ReliaStar Life Ins. Co.*, 60 So. 3d 1148, 1150 (Fla. 5th DCA 2011) ("Rescission is an equitable remedy where the primary obligation is to undo the original transaction and restore the former status of the parties.").

*Inc.*, 527 U.S. 308, 333 (1999)) ("loss of the ability to collect a money judgment is not typically regarded as irreparable harm under Rule 65"). However, in some cases, "concealment and dissipation of assets likely obtained through fraud constitutes irreparable harm for the purposes of issuing a preliminary injunction." *McGirr v. Rehme*, 891 F.3d 603, 613 (6th Cir. 2018) (quotation omitted); *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 628 (6th Cir. 2013) (affirming the district court's grant of injunctive relief when the defendant's underlying actions "reeked of fraud").

Plaintiffs argue that they will suffer immediate irreparable injury absent an injunction because the Equipment may be disposed of or concealed. (Doc. 10 at 10). Plaintiffs also argue that Mr. Franklin has a history of scamming gym owners and customers, so there "is no telling" what Defendants may do with the Equipment absent an injunction.[14] (*Id.* at 11).

This factor is a close call. However, in the specific circumstances of this case, the Court finds that Plaintiffs have shown irreparable harm. Although Plaintiffs' ultimate form of relief may turn out to be monetary (rather than equitable), Plaintiffs have shown that they face a serious risk of no recovery if Defendants are not enjoined. Defendants have a history of fraudulent conduct, are likely to dispose of the Equipment absent an

---

[14] Plaintiffs cite a video news story from 2012, in which Mr. Franklin was questioned about allegedly fraudulent business practices. (Doc. 10 at 9, n.3). "A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Concentrix CVG Customer Mgmt. Grp. Inc. v. Daoust*, No. 1:21-CV-131, 2021 WL 1734284, at *7 (S.D. Ohio May 3, 2021) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Thus, without considering whether the video would be admissible at trial, it is appropriate for the Court to accord the video some weight at this preliminary stage.

injunction, and are likely to conceal themselves from any adverse judgment. Indeed, despite being given repeated notices, extensions, and opportunities to be heard, OH Steele has taken no action to retain counsel and appear in the case. Moreover, other than one telephonic appearance, Mr. Franklin (the sole member of OH Steele Fitness) has taken no effort to respond to Plaintiffs' serious allegations.

Accordingly, the Court finds that Plaintiffs have carried their burden of showing that they will face irreparable harm absent an injunction.

### 3. *Harms to Others*

The third preliminary injunction factor is whether an injunction would cause substantial harm to others. Here, there is no indication that a preliminary injunction enjoining Defendants from moving the Equipment would cause any harm to third parties. Accordingly, this factor does not weigh against issuance of an injunction.

### 4. *Public Interest*

The fourth and final preliminary injunction factor is whether the public interest would be served by the issuance of an injunction. "Enforcement of contractual duties is in the public interest." C*ertified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). Accordingly, this final factor weighs in favor of a preliminary injunction.

Having considered and balanced all four preliminary injunction factors, the Court finds that Plaintiffs have carried their burden of proving that the circumstances in this case demand an injunction.

### 5. *Bond*

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "While this language appears to be mandatory, 'the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.'" *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quotation omitted). The Court is required to consider the question of requiring a bond before issuing a preliminary injunction. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978).

Given the strength of Plaintiffs' likelihood of success on the merits and Defendants failure to request a bond, the Court will not order Plaintiffs to post a bond.

### C. Plaintiffs' request for an order of possession is DENIED.

"At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The remedies available under this rule include replevin. *Id.* at 64(b).

In Ohio, "[r]eplevin is a statutorily-created means to obtain personal property that one has the right to possess." *Peterson v. Booth*, 213 N.E.3d 251, 256 (Ohio Ct. App.

2023); *see also* Ohio Rev. Code §§ 2737.01 *et seq.* [15] "It is based on the existence of an unlawful detention, and its purpose is the return of the property to the rightful possessor." *Id.* "[R]eplevin is solely a prejudgment remedy" that a party may seek prior to the entry of a final judgment. *Gates v. Praul*, No. 10AP-784, 2011 WL 6036397, at *9 (Ohio Ct. App. Dec. 6, 2011); Ohio Rev. Code. § 2737.02. Moreover, "replevin is 'an extraordinary remedy which has always been zealously guarded by the courts and which must continue to be recognized as a right carefully scrutinized and exercised with care and caution.'" *Deere Credit, Inc. v. Clayton R.R. Constr., LLC*, No. 1:11-CV-823, 2012 WL 13026849, at *5 (S.D. Ohio July 2, 2012) (quoting *Maryland Nat. Bank v. Jenkins*, No. 86-CA-13, 1986 WL 12657, at *2 (Ohio Ct. App. Oct. 30, 1986)).

Ohio Rev. Code § 2737.03(B) requires a showing of "[t]he specific interest of the movant in the property and, if the interest is based upon a written instrument, a copy of that instrument." "Because '[a] Replevin action is a possessory action by which the owner or one who has a general or special interest in the personal property and the right to immediate possession seeks to recover the possession of the property ... [t]he right of possession of the property because of title or interest in it is an essential element in a Replevin action.'" *Verathon, Inc. v. DEX One Serv., Inc.*, No. 2:13-CV-205, 2013 WL

---

[15] Although the APA is governed by Florida law, Rule 64 incorporates "the law of the state where the court is located." Fed. R. Civ. P. 64(a). Accordingly, this Court applies Ohio law to Plaintiffs' request for an order of possession. *Edgen Murray Corp. v. Vortex Marine Constr., Inc.*, No. 18-CV-01444-EDL, 2018 WL 6786264, at *2 (N.D. Cal. Dec. 18, 2018) (collecting cases); *cf. Prou v. Giarla*, 62 F. Supp. 3d 1365, 1378 (S.D. Fla. 2014) ("Under Florida law, "replevin is a possessory action that requires *in rem* jurisdiction over the subject matter.").

1627073, at *8 (S.D. Ohio Apr. 16, 2013) (quoting *J & J Truck and Trailer Repair, Inc. v. Cyphers*, No. 6625, 1980 WL 352585, at *1 (Ohio Ct. App. Dec. 12, 1980)).

After review of Plaintiffs' supporting documentation and legal arguments, the Court is not convinced that Plaintiffs have shown their right to possession of the property because of title or interest. Here, the APA undercuts any argument that Plaintiffs have possessory interest in the Equipment. The APA does not provide for any secured interest in the Equipment until payment is made. Rather, the APA provides that: "The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof." (Doc. 10-4 at 13, Sec. VII.13). Defendants' specific performance pursuant to the APA is paying the $60,000 purchase price.

To be sure, Defendants have skirted their obligations under the APA by failing to pay the purchase price and have ignored Plaintiffs' requests for payment. But Plaintiffs have failed to argue why money damages for the breach of contract would be insufficient in this case.[16] Indeed, "[i]t is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020); *see also Spanish Broad. Sys. of Fla., Inc. v. Alfonso*, 689

---

[16] If anything, Plaintiffs' desire for a court order to repossess the Equipment (which includes only the gym equipment and no other assets which were part of the APA), instead of money damages, suggests sellers' remorse. Plaintiffs sold their entire business for $60,000. Now, Plaintiffs value the Equipment portion of their business at over $150,000, and have suggested that they already have another (perhaps better) buyer for the Equipment.

So. 2d 1092, 1094–95 (Fla. 3d DCA 1997) (cleaned up) ("The mere obligation to pay money may not be enforced by a conversion action. An action in tort is inappropriate where the basis of the suit is contract, either express or implied.").

Replevin is an extraordinary remedy that must be exercised with care and caution. Plaintiffs have not carried their burden of showing their entitlement to an order of possession. Moreover, as discussed *supra*, the Court grants Plaintiffs' request for a preliminary injunction, which may be issued in lieu of any available relief under Ohio's replevin law. Ohio Rev. Code § 2737.20. Accordingly, Plaintiffs' request for an order of possession is **DENIED**.[17]

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs' motion (Docs. 10) is **GRANTED in part** and **DENIED in part**.[18] Plaintiffs' request for an order of possession is **DENIED**. Plaintiffs' request for a preliminary injunction is **GRANTED**. Accordingly, Defendants shall not to move, sell, dispose of, or conceal the Equipment (Docs. 10-2, 10-3) from the Premises (827 W. Central Ave., Springboro, Ohio 45066), and shall not allow any other person or entity to move, sell, dispose of, or conceal the Equipment from the Premises. Plaintiffs need not post bond.

---

[17] Because Plaintiffs' request for an order of possession is denied, Plaintiffs' praecipe for service of notice and motion for order of possession (Doc. 15) is **DENIED as moot**.

[18] Plaintiffs submitted a proposed order of possession, which was filed as a motion. That motion (Doc. 11) shall be **terminated as moot**.

**IT IS SO ORDERED.**

Date:  10/19/2023

Timothy S. Black
United States District Judge